Filed 12/21/20  P. v. Mata CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>JOHNNY MATA,<br><br>      Defendant and Appellant. | B294526<br><br>(Los Angeles County<br>Super. Ct. No. KA101342) |

        APPEAL from a judgment of the Superior Court of Los Angeles County, Robert M. Martinez, Judge.  Affirmed.
        Mary Jo Strnad, under appointment by the Court of Appeal, for Defendant and Appellant.
        Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill and Steven E. Mercer, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

In a prior appeal Johnny Mata, whom a jury convicted of murder and possession of a firearm by a felon, contended his trial counsel provided ineffective assistance. (*People v. Mata* (Jan. 2, 2019, B277734) [nonpub. opn.] (*Mata II*).)[1] We affirmed the convictions, but directed the trial court to exercise its discretion whether to strike a firearm enhancement under Penal Code section 12022.53, subdivision (d),[2] and an enhancement for a prior serious felony conviction under section 667, subdivision (a).

In this appeal Mata contends the trial court erred in denying his motion under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*) to replace his appointed counsel. Mata also contends the trial court "lacked jurisdiction" to double his sentence under the three strikes law and to impose the five-year enhancement under section 667, subdivision (a), for his prior serious felony conviction. We affirm.

---

[1] In *People v. Mata* (Mar. 26, 2018, B270264 [nonpub. opn.]) (*Mata I*), Mata appealed after a jury convicted him, in an unrelated case, of attempted murder and possession of firearm by a felon. We conditionally reversed the convictions and remanded for a new hearing on Mata's motion under *Batson v. Kentucky* (1986) 476 U.S. 79 [106 S.Ct. 1712, 90 L.Ed.2d 69] and *People v. Wheeler* (1978) 22 Cal.3d 258. Mata has appealed from the judgment following those proceedings on remand, which is case number B301044 (*Mata IV*). This appeal is *Mata III*.

[2] Undesignated statutory references are to the Penal Code.

2

# FACTUAL AND PROCEDURAL BACKGROUND

A.   *Mata Kills a Rival Gang Member, and the People
     File Charges Against Him*

On December 23, 2010 Mata, a member of the El Monte Flores criminal street gang, shot and killed David Deanda, a member of the rival East Side Bolen gang.  In June 2012, while Mata was awaiting trial in an unrelated case for the attempted murder of another individual, Timmy Saldana, the detectives working on the Deanda shooting obtained evidence suggesting Mata killed Deanda.  (*Mata II*, *supra*, B277734.)

The People charged Mata with the murder of Deanda and alleged that he committed the murder for the benefit of, at the direction of, or in association with a criminal street gang with the specific intent to promote, further, or assist in criminal conduct by gang members, within the meaning of section 186.22, subdivision (b), and that Mata personally and intentionally discharged a firearm causing great bodily injury or death, within the meaning of section 12022.53, subdivision (d).  The People also charged Mata with possession of a firearm by a felon (former § 12021, subd. (a)(1), now § 29800, subd. (a)(1)).  The People also alleged that Mata had a prior serious or violent felony conviction within the meaning of the three strikes law (§§ 667, subds. (b)-(j), 1170.12) and that he had a prior serious felony conviction within the meaning of section 667, subdivision (a)(1).  The trial court consolidated the Deanda murder case with the Saldana attempted murder case.  (*Mata II*, *supra*, B277734.)

B.    *The Jury Convicts Mata of Murder, and the Court Sentences Him*

Following a trial in 2015 the jury found Mata guilty of the attempted murder of Saldana,[3] but could not agree on a verdict for the murder of Deanda.  The trial court declared a mistrial on the murder charge and set the case for a retrial.

Following a retrial on the murder charge, the jury found Mata guilty of the first degree murder of Deanda and of possessing a firearm as a felon.  The jury also found true the gang and firearm allegations.  In a bifurcated proceeding, Mata admitted that in 1997 he was convicted of attempted murder.  The trial court found the conviction was for a serious or violent felony within the meaning of the three strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and a serious felony within the meaning of section 667, subdivision (a).  (*Mata II*, *supra*, B277734.)

The trial court sentenced Mata to a prison term of 86 years to life, consisting of 25 years to life for the first degree murder conviction, doubled under the three strikes law, plus 25 years to life for the firearm enhancement under section 12022.53, subdivision (d), five years for the enhancement under section 667, subdivision (a), and six years for the conviction for possession of a firearm by a felon.  (*Mata II*, *supra*, B277734.)

---

[3]    The jury also found Mata guilty of possession of a firearm by a felon (§ 29800, subd. (a)(1)).  As discussed, Mata appealed the convictions in connection with the attempted murder of Saldana in *Mata I*, *supra*, B270264.

C.    *This Court Affirms the Convictions and Directs the Trial Court To Exercise Its Discretion Whether To Strike Two Enhancements*

Mata appealed, arguing his trial counsel, Antonio Bestard, provided ineffective assistance.  We affirmed Mata's convictions, but vacated Mata's sentence and directed the trial court to exercise its discretion whether to strike the firearm and serious felony enhancements under recent amendments to sections 667, 1385, and 12022.53 that give the court discretion to strike those enhancements in the interest of justice.  (*Mata II*, *supra*, B277734.)

D.    *The Trial Court Resentences Mata*

At the resentencing hearing, Bestard informed the court Mata wanted to file a motion under *Marsden*, *supra*, 2 Cal.3d 118 to replace Bestard as his appointed counsel.  The court held a hearing on Mata's *Marsden* motion and denied it.  The court, after declining to strike either enhancement, imposed the same sentence.  Mata timely appealed.

## DISCUSSION

A.    *The Trial Court Did Not Abuse Its Discretion in Denying Mata's* Marsden *Motion*

Mata argues the trial court abused its discretion in denying his motion to replace Bestard "without permitting him to explain his reasons" for "his dissatisfaction with his appointed private counsel."  Mata also argues the court erred in failing "to exercise its own discretion and instead deferred to this Court's ruling . . . affirming Mata's conviction against an ineffective assistance of counsel claim."  The trial court, however, conducted an adequate

5

inquiry and did not abuse its discretion in denying the motion. In addition, any error was harmless.

1. *Relevant Proceedings*

The trial court began the hearing on Mata's *Marsden* motion by asking Mata, "What can I do for you?" Mata said he wanted new counsel because "it won't make sense to have . . . Bestard defend [him] again if [he was] only appealing what happened in [his] trial." The following exchange occurred:

"The Court: What's the difficulty with Mr. Bestard?

"[Mata]: Well, like I said, the way he defended me, I don't think he did a good job.

"The Court: And then that's based on matters that you raised on appeal, is that correct?

"[Mata]: Correct.

"The Court: And the Court of Appeal disagreed with you as far as his competency. What else is the difficulty?

"[Mata]: Well, that's just it. I just don't feel that he should have represented me because it's not over. My appeal is not over. You see, there is another level to it.

"The Court: I understand that. You see, right now, we're here on a limited area . . . and that's for the court to exercise discretion as far as your priors are concerned, as far as the use allegation is concerned. That's it.

"[Mata]: Right.

"The Court: That's all we're dealing with. I am not dealing with other matters on appeal or whatever, you know. And you raised issues about whether he did a good job or whatever. And the Court of Appeal said, you know, that he acted properly. So, what are the differences?"

Mata asked the court to continue the resentencing hearing until after his "appeal" and "habeas corpus." The court denied

the request for a continuance, and Mata asked again for "another counsel." The court told Mata he had not given "any reason" to appoint new counsel. Mata stated, "I just gave—I just told you [the] reason." The court again explained to Mata that this court held "there was no basis to find [Bestard] incompetent." The court asked Mata, "What else is there that's the conflict between you and him?"

Mata said Bestard had refused to sign an affidavit "saying that he messed up [the] trial." The court asked Mata, "How did he mess it up?" Mata said "everybody knew" he "was going to lose." The court again asked Mata, "And you raised these issues on appeal?" Mata stated, "I understand," and again complained Bestard would not honor his agreement to sign a declaration stating that he "messed up [the] trial and that things went wrong."

Bestard explained that he initially agreed to sign a declaration about the "procedural aspects or anything that would help [Mata]," but that he refused to sign it after he received a "protracted letter" from Mata's appellate counsel asking him to attest to "incorrect allegations" and admit to "things that [he] didn't do," including that he "never read the police report," "never interviewed witnesses," and "didn't investigate the case at all." Bestard said he told Mata's appellate counsel he was "very uncomfortable signing things that were not true or were not perceived to be true." Bestard summarized the obstacles he faced in presenting the evidence in the trial. Referring to the actions he took at trial that this court addressed in *Mata II*, Bestard stated "they were all strategic moves by me why I didn't call certain witnesses." After Bestard responded to Mata's allegations he was incompetent and had a conflict with Mata, the court asked Mata, "Anything more?" Mata replied, "That's it." The court denied the motion.

2. *Applicable Law and Standard of Review*

"'''''"When a defendant seeks to discharge his appointed counsel and substitute another attorney, *and asserts inadequate representation*, the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of the attorney's inadequate performance."''''''" (*People v. Johnson* (2018) 6 Cal.5th 541, 572; accord, *People v. Winn* (2020) 44 Cal.App.5th 859, 870.) "''"A defendant is entitled to relief if the record clearly shows that the appointed counsel is not providing adequate representation or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result.'" [Citation.] 'A trial court should grant a defendant's *Marsden* motion only when the defendant has made "a substantial showing that failure to order substitution is likely to result in constitutionally inadequate representation."'" (*People v. Streeter* (2012) 54 Cal.4th 205, 230; accord, *People v. Loya* (2016) 1 Cal.App.5th 932, 945.)

"'It is the very nature of a *Marsden* motion . . . that the trial court must determine whether counsel has been providing competent representation. Whenever the motion is made, the inquiry is forward-looking in the sense that counsel would be substituted in order to provide effective assistance in the *future*. But the decision must always be based on what has happened in the *past*.'" (*People v. Sanchez* (2011) 53 Cal.4th 80, 88; see *People v. Winn, supra,* 44 Cal.App.5th at p. 871 ["if trial counsel's performance was deficient at an earlier stage of the trial, [the defendant] had the right to new counsel for the purposes of sentencing or moving for a new trial"]; *People v. Lucero* (2017) 18 Cal.App.5th 532, 537 ["a criminal defendant can move to discharge his or her current appointed counsel and to appoint new counsel based on ineffective assistance"]; *People v. Dennis* (1986) 177 Cal.App.3d 863, 870 ["'Ineffective assistance of counsel

is the underlying plank which supports the *Marsden* rule.'"]; see also *People v. Lee* (2002) 95 Cal.App.4th 772, 779 ["In seeking discharge of a court appointed attorney the defendant must show more than the fact the attorney made a mistake, he must show lack of competence."].)

'"We review the denial of a *Marsden* motion for abuse of discretion.' [Citation.] 'Denial is not an abuse of discretion "unless the defendant has shown that a failure to replace counsel would substantially impair the defendant's right to assistance of counsel."'" (*People v. Streeter, supra*, 54 Cal.4th at p. 230; accord, *People v. Loya, supra*, 1 Cal.App.5th at p. 944.)

### 3. *The Trial Court Conducted an Adequate Inquiry*

The trial court gave Mata ample opportunity to explain his reasons for seeking to replace his appointed counsel. After Mata expressed his dissatisfaction with Bestard, the trial court asked several follow-up questions and gave Mata several chances to relate any matters beyond those Mata had already raised, and this court decided, in his appeal (i.e., *Mata II*). The trial court asked Mata whether his opinion that Bestard did not do a good job in the trial was based on matters he raised on appeal, and Mata admitted it was. When the court asked Mata what other difficulties he had with Bestard, Mata could only say he did not "feel" Bestard should represent him because his appeal had not concluded. After describing this court's conclusions in *Mata II* about Bestard's competence, the court gave Mata a third opportunity to describe any "differences" he had with Bestard. The court also allowed Mata to explain fully why he believed he had a conflict with Bestard. Finally, before ruling on the motion, the court asked Mata if there was "anything more" he wanted to present. The trial court allowed Mata to present all the

9

information the court needed to make a ruling.  (See *People v. Gutierrez* (2009) 45 Cal.4th 789, 803 [""a *Marsden* hearing is not a full-blown adversarial proceeding, but an informal hearing in which the court ascertains the nature of the defendant's allegations regarding the defects in counsel's representation and decides whether the allegations have sufficient substance to warrant counsel's replacement""]; *People v. Valdez* (2004) 32 Cal.4th 73, 96 [same].)

Nor did the trial court err in limiting its consideration of Mata's complaints about Bestard's representation to instances Mata did not raise in *Mata II*.  This court decided in *Mata II* that none of the alleged instances of Bestard's incompetence Mata raised in that appeal amounted to ineffective assistance of counsel.  For example, this court concluded Bestard had tactical reasons for not impeaching a particular witness the same way Mata's trial counsel in the first trial had impeached the witness, for not asking an eyewitness to identify Mata in court, and for not calling certain witnesses.  (*Mata II*, *supra*, B277734.)  These tactical decisions also supported the trial court's decision at resentencing not to replace Mata's appointed counsel.  (See *People v. Frederickson* (2020) 8 Cal.5th 963, 1001 ["tactical disagreements . . . do not by themselves constitute an irreconcilable conflict"]; *People v. Streeter*, *supra*, 54 Cal.4th at pp. 230-231 ["tactical disagreements between a defendant and his attorney or a defendant's frustration with counsel are not sufficient cause for substitution of counsel"].)  Allowing Mata to reargue all the examples of Bestard's alleged incompetence that this court considered and rejected in *Mata II* would not have yielded any new information or led to a different conclusion about Bestard's competence.

Mata argues that a "*Marsden* motion and ineffective assistance of counsel serve different purposes" and, citing *People*

10

*v. Dennis, supra,* 177 Cal.App.3d at page 871, that "'a ruling in one does not ipso facto support a ruling in the other.'" Mata reads *Dennis* too expansively. The court in *Dennis* held the trial court erred in granting a motion for new trial based on ineffective assistance of counsel "simply on the basis of the *Marsden* motion" granted earlier in the proceedings. (*Dennis,* at p. 872.) The court explained that the "issue in a *Marsden* hearing is whether the continued representation by an appointed counsel would substantially impair or deny the right to effective counsel," whereas "when a defendant attacks a verdict on the ground of inadequate assistance of counsel the focus is not just upon whether the representation actually received was competent," but also "on whether counsel's challenged acts or omissions were prejudicial to the defendant." (*Id.* at pp. 870-871.) Thus, the court in *Dennis* concluded the two motions "should not be combined in a manner which insulates a defendant from an adversarial proceeding and unilaterally allows him to circumvent his burden when attacking a conviction." (*Id.* at p. 869.) Here, the trial court did not avoid making any findings necessary to determine whether Bestard could continue to effectively represent Mata. The trial court reasonably concluded that none of the instances of alleged attorney incompetence that Mata raised and that this court rejected in *Mata II* would have supported replacing Bestard. (Cf. *People v. Lucero, supra,* 18 Cal.App.5th at p. 539 [where the appellate court held in the defendant's prior appeal that appointed counsel "rendered ineffective assistance," the ruling "was, in substance, a finding that defendant's 'appointed attorney [was] not providing adequate representation'; in the *Marsden* context, this finding would require [counsel] to be discharged and replaced"].) The trial court did not err in ruling Mata was only entitled to present evidence of other instances of incompetence to show that Bestard

11

was ""'not providing adequate representation'"" or that he and Bestard ""'have become embroiled in such an irreconcilable conflict that ineffective representation [was] likely to result'"" (*People v. Streeter*, *supra*, 54 Cal.4th at p. 230).

The two cases Mata cites to argue he was entitled to replace his appointed counsel for the resentencing hearing based on conduct we concluded in *Mata II* was not ineffective assistance, *People v. Solorzano* (2005) 126 Cal.App.4th 1063 and *People v. Mack* (1995) 38 Cal.App.4th 1484, do not support his argument.  In *Solorzano*, which involved a *Marsden* motion the defendant made during competency proceedings under section 1368, the court held that the trial court should have held a hearing on the defendant's *Marsden* motion before adjudicating the defendant's competency, not after the court reinstated the criminal proceedings after finding the defendant competent. (*Solorzano*, at pp. 1070-1071.)  Unlike the trial court in *Solorzano*, the trial court here held a *Marsden* hearing as soon as Mata asked for it.  In *Mack* the defendant told the trial court, prior to hearing a motion for new trial, he wanted to be heard regarding a conflict he had with his attorney, but the court refused to hear from the defendant.  (*Mack*, at pp. 1486-1487.) The court in *Mack* held the trial court erred in failing to give the defendant an opportunity to "state the reasons for his expressed dissatisfaction with trial counsel" and in failing to "inquire into his request for substitution of counsel."  (*Id*. at p. 1487.)  The trial court here gave Mata many opportunities to state his reasons for requesting substitute counsel and inquired at length into the substance of Mata's dissatisfaction with Bestard.

4. *The Trial Court Did Not Abuse Its Discretion in Denying the Motion*

Mata asserts the trial court abused its discretion when, instead of making "its own finding," it "deferred" to our ruling in *Mata II* that Bestard did not provide ineffective assistance. Contrary to Mata's assertion, the trial court did make a finding, albeit implied, that Mata failed to make """a substantial showing that failure to order substitution is likely to result in constitutionally inadequate representation.""" (*People v. Streeter*, *supra*, 54 Cal.4th at p. 230.) The court reasonably considered our conclusion that Bestard did not provide ineffective assistance for the reasons stated in *Mata II* and, after repeated attempts to elicit from Mata any additional grounds for claiming Bestard was ineffective, ruled that Mata's objections did not have """sufficient substance to warrant counsel's replacement""" (*People v. Gutierrez*, *supra*, 45 Cal.4th at p. 803).

The court also thoroughly probed the one new conflict Mata identified he had with Bestard: Bestard's refusal to sign an affidavit drafted by appellate counsel for Mata that contained false statements. To the extent the trial court made a credibility determination, the court "'was "entitled to accept counsel's explanation."'" (*People v. Rices* (2017) 4 Cal.5th 49, 69.) Moreover, Bestard's decision not to perjure himself was not relevant to whether he was able to represent Mata effectively during the resentencing proceedings after *Mata II*. While Mata may have disagreed with Bestard's decision not to sign a false declaration, Mata did not show that such a conflict was "'irreconcilable'" or that "'ineffective representation [was] likely to result.'" (*People v. Sanchez*, *supra*, 53 Cal.4th at p. 89.) The trial court did not abuse its discretion in ruling that Bestard's unwillingness to compromise his integrity and lie under oath to enable Mata to challenge his convictions was not a ground for

13

replacing Bestard. (See *People v. Taylor* (2010) 48 Cal.4th 574, 600 ["'a defendant may not force the substitution of counsel by his own conduct that manufactures a conflict'"].)

### 5. *Any Error in Limiting the* Marsden *Hearing or in Denying the Motion Was Harmless*

"The standard for prejudice regarding a denied *Marsden* motion is under *Chapman v. California* (1967) 386 U.S. 18 [87 S.Ct. 824, 17 L.Ed.2d 705]." (*People v. Loya, supra,* 1 Cal.App.5th at p. 945.) The same standard for prejudice applies to any errors the court committed in conducting its inquiry. (See *People v. Winn, supra,* 44 Cal.App.5th at p. 871 [trial court's error in failing to inquire further whether counsel provided constitutionally adequate representation "'is reversible unless the record shows beyond a reasonable doubt that the error did not prejudice defendant'"].)

Here, even if the trial court erred in limiting the scope of the inquiry at the hearing on Mata's *Marsden* motion, the error was harmless beyond a reasonable doubt. As discussed, because this court already resolved the question of Bestard's competence in conducting the trial, none of those instances could have justified replacing him. (See *Mack, supra,* 38 Cal.App.4th at pp. 1487-1488 [trial court's failure to hold a *Marsden* hearing "was harmless beyond a reasonable doubt" because "[t]he issue of trial counsel's alleged incompetence has been thoroughly addressed by appellate counsel both in the direct appeal and in a collateral writ"]; see also *id.* at p. 1488 ["justice is not expedited by indulging in appellate and collateral writ review, finding no merit to the issues raised, and then remanding to the trial court for review of the apparently identical matters"].) In addition, the record shows beyond a reasonable doubt Mata would not have achieved a more favorable result had the trial court appointed

14

new counsel to represent him in the limited proceedings on remand.  (See *People v. Henning* (2009) 178 Cal.App.4th 388, 404-405 ["the trial court's failure to substitute counsel was harmless beyond a reasonable doubt" because, even though appointed counsel "wrongly refused to allow defendant to enter a [not guilty by reason of insanity] plea," "no credible evidence could be mustered for an insanity defense"]; *People v. Washington* (1994) 27 Cal.App.4th 940, 944 [concluding, after reviewing counsel's actions, that "no grounds for claiming ineffective assistance of counsel exist" and that, even though the trial court failed to hold a hearing on the *Marsden* motion, the appointment of a different attorney could not have had "any effect on the sentence imposed"].)

Any doubt regarding whether a different attorney could have secured a better outcome for Mata was eliminated by, as we will discuss, the trial court's comments at the resentencing hearing that it could not conceive of "any information" that would persuade it to strike the firearm enhancement or the prior felony conviction enhancement, given the circumstances of how Mata murdered Deanda.  (See *People v. Winn*, *supra*, 44 Cal.App.5th at p. 871 [trial court's error in denying the defendant's *Marsden* motion without conducting a further inquiry was "harmless beyond a reasonable doubt" because the evidence of the defendant's guilt was "overwhelming"].)

B.	*The Trial Court Did Not Err in Resentencing Mata*

Mata contends the trial court "lacked the authority to sentence him as a second striker" and to reimpose "the same serious felony enhancement" under section 667, subdivision (a), because Proposition 57 and Senate Bill No. 1391 precluded the trial court from using his 1997 attempted murder conviction to

15

sentence him.  Neither Proposition 57 nor Senate Bill No. 1391, however, applies to this case.

1. *Relevant Proceedings*

After the trial court denied Mata's *Marsden* motion, Bestard asked the court for a continuance to obtain information for a hearing under *People v. Franklin* (2016) 63 Cal.4th 261 and a petition under section "1170.90."[4]  Bestard argued that, if the court denied the motion for continuance and proceeded to resentence Mata, the court would "not have discretion" to use Mata's 1997 felony conviction for purposes of the three strikes law because, "under the current state of the law, . . . if the individual was a minor at the time of the prior strikes, it should be stricken."  The People objected to a continuance and argued this court had remanded the case "for a very limited purpose": to exercise discretion whether to strike two specific enhancements.

Bestard argued that he needed time to obtain a new probation report and to get Mata's "C-file"[5] and a "social study" to support his argument the court should "exercise its discretion in

---

[4]    Bestard may have been referring to section 1170, because he raised the issue of a hearing under *People v. Franklin*, *supra*, 63 Cal.4th 261 in the same sentence.  Section 1170, subdivision (d)(2), provides a procedure for a defendant "who was under 18 years of age at the time of the commission of the offense for which the defendant was sentenced to imprisonment for life without the possibility of parole" to petition for recall and resentencing after he or she has been incarcerated for 15 years. (See *People v. Gibson* (2016) 2 Cal.App.5th 315, 326.)

[5]    "C-file" commonly refers to "the confidential correctional inmate files maintained by the Department of Corrections." (*People v. Landry* (2016) 2 Cal.5th 52, 71; see § 2081.5.)

16

favor of . . . Mata." Bestard argued that Mata "has matured five more years since the time of the sentence" and that the court should take that into consideration in exercising its discretion whether to impose the "penalties" under section 667, subdivision (a), and section 12022.53, subdivision (d).

The trial court observed it presided over the trial in this case, where the jury convicted Mata of first degree murder, and in Mata's other case, where the jury convicted Mata of attempted premeditated murder. The trial court stated that Mata "was a fugitive from justice" in this case "for a significant period of time," that he was "a documented criminal street gang member," and (apparently referring to the facts of Mata's 1997 conviction for attempted murder) that he "was responsible for the attempted murder of a black gentleman for walking on the street." The court stated that this court directed the trial court to address only "whether at the time of sentence or today, the court feels that the use allegation in this murder or the prior serious felony should be stricken." The court stated, "I can't conceive of any information that . . . Mata can provide that's going to persuade this court to strike the personal use of a firearm that resulted in the death of another human being and reduce his sentence by a term [of] 30 years to life."

Turning to the issue of Mata's prior felony conviction, the court stated, "The issue of [the] . . . prior conviction as a juvenile is an issue that's going to be addressed by the appellate court or the Supreme Court." The court commented that, because Mata's prior conviction "was long ago finalized," the court did not believe Mata was "entitled to the benefits" of "the initiative that changed and limit[ed] fitness[ ] to persons 16 years or older." The court also observed that Mata "has been in custody seven years" and remarked, "I don't know if he has matured. I have been informed, but I have not verified, that yesterday he punched

17

somebody in the face in the lockup. . . .  So much for his maturity."

The court denied the motion to continue the sentencing hearing and the motion to strike the firearm enhancement and the enhancement under section 667, subdivision (a).  The court stated:  "The court finds that the interest of justice would not be enhanced in any sense by the striking of the . . . [firearm] use discharge that results in death or serious bodily injury.  The murder of Mr. Deanda can only be described as an execution, and that motion is denied, as is the motion under [section] 667[, subdivision] (a).  Again, the court cannot find any circumstance that would justify or warrant the reduction or the striking of that five-year term."

Referring to the disposition in *Mata II*, which vacated Mata's original sentence, the prosecutor asked the court if the court "need[ed] to restate the sentence on the record."  The court replied, "I don't believe so.  The record will remain the same.  That was a 25-to-life [term] doubled to 50 by virtue of his prior, plus an additional consecutive term of 25 years to life for the personal use discharge that resulted in a death, plus a five-year" enhancement under section 667, subdivision (a), and the upper term of six years for the conviction for possession of a firearm by a felon.  The court stated that the "total sentence remains 86 years to life."

> 2. *Mata's 1997 Conviction for Attempted Murder Was a Serious or Violent Felony Under the Three Strikes Law and a Serious Felony Under Section 667, Subdivision (a)*

Mata argues that, in light of Proposition 57 and Senate Bill No. 1391, the trial court "acted in excess of its jurisdiction when it sentenced Mata as a strike offender and when it imposed a

18

five-year prior serious felony enhancement." Neither Proposition 57 nor Senate Bill No. 1391, however, invalidated the 1997 conviction or precluded the trial court from using it in sentencing Mata.

At the time Mata committed attempted murder in 1996 (when he was 15 years old), a "minor accused of a crime [was] subject to the juvenile court system, rather than the criminal court system, unless the minor [was] determined to be unfit for treatment under the juvenile court law or [was] accused of certain serious crimes." (*Manduley v. Superior Court* (2002) 27 Cal.4th 537, 548; see Welf. & Inst. Code, former § 707, subd. (a).) "[M]inors who committed one of several enumerated serious or violent felonies . . . when they were 14 or 15 could be found unfit by the juvenile court and transferred to criminal court." (*B.M. v. Superior Court* (2019) 40 Cal.App.5th 742, 751, review granted Jan. 2, 2020, S259030; see Welf. & Inst. Code, former § 707, subd. (d); Stats. 1994, ch. 453, § 9.5; *Hicks v. Superior Court* (1995) 36 Cal.App.4th 1649, 1655-1656.)[6] After a finding of unfitness, the district attorney could "file an accusatory pleading against the minor in a court of criminal jurisdiction, and the case then [would] proceed[ ] according to the laws applicable to a criminal proceeding." (*Manduley*, at p. 549; see Welf. & Inst. Code, § 707.1, subd. (a); *People v. Self* (1998) 63 Cal.App.4th 58, 61.)

---

[6] Under "[a]mendments to former sections 602 and 707 in 1999 and 2000, . . . in specified circumstances, prosecutors were permitted, and sometimes required, to file charges against a juvenile directly in criminal court, where the juvenile would be treated as an adult." (*Lara, supra*, 4 Cal.5th at p. 305.)

Here, not only was Mata convicted in adult court in 1997 of attempted murder, a serious or violent felony under the three strikes law and a serious felony under section 667, subdivision (a),[7] Mata admitted he was.  (See *People v. Cross* (2015) 61 Cal.4th 164, 175 ["'[t]he admission of the truth of the allegation of prior convictions . . . allow[s] a determination of a "status" which can subject an accused to increased punishment'"].)  Thus, the trial court properly sentenced Mata under the three strikes law and imposed the five-year enhancement under section 667, subdivision (a).  That Mata was 15 years old when he committed attempted murder did not preclude the court from sentencing him under the three strikes law or imposing the enhancement under section 667, subdivision (a).  (See *People v. Cole* (2007) 152 Cal.App.4th 230, 236-237 ["Sections 667 and 1170.12 unambiguously contemplate that minors will be charged with having committed criminal offenses that can be strikes," and "if the minor is found unfit for handling in the juvenile court and is found in adult court to have committed a serious or violent felony, that felony is a strike."]; see also *Manduley v. Superior Court, supra*, 27 Cal.4th at p. 578 ["juveniles prosecuted in criminal court . . . who commit [violent or serious felonies] are subject to the increased penalties and other restrictions imposed by the Three Strikes law"]; *People v. Blankenship* (1985) 167 Cal.App.3d 840, 851-852 [trial court could use the defendant's prior felony conviction sustained in another jurisdiction when he was 15 years old to enhance his sentence under section 667, subdivision (a)]; *People v. West* (1984) 154 Cal.App.3d 100, 110 [the Victim's Bill of Rights (Cal. Const.,

---

[7]      Attempted murder is a violent felony under section 667.5, subdivision (c), and a serious felony under section 1192.7, subdivision (c).

20

art. I, § 28, subd. (f)) "permits the unlimited use of prior felony *convictions* for enhancement purposes [under section 667, subdivision (a)], whether the person convicted was an adult or juvenile being tried as an adult at the time of the prior conviction"].)

Neither Proposition 57 nor Senate Bill No. 1391 says anything about the use of a prior felony conviction for sentencing purposes where the juvenile offender commits another felony as an adult, as Mata did in this case. Effective 2016, "'Proposition 57 amended the Welfare and Institutions Code so as to eliminate direct filing by prosecutors. Certain categories of minors . . . can still be tried in criminal court, but only after a juvenile court judge conducts a transfer hearing to consider various factors such as the minor's maturity, degree of criminal sophistication, prior delinquent history, and whether the minor can be rehabilitated.'" (*Lara, supra*, 4 Cal.5th at pp. 305-306; see *B.M. v. Superior Court, supra*, 40 Cal.App.5th at p. 752 ["Under Proposition 57, district attorneys could request to transfer only two categories of minors—(i) 16 and 17 year olds alleged to have committed a felony and (ii) 14 and 15 year olds alleged to have committed a specified serious or violent felony."].)

Effective January 1, 2019, Senate Bill No. 1391 "eliminated district attorneys' ability to request transfer hearing[s] for 14 and 15 year olds, thereby returning California's minimum transfer age to 16." (*B.M. v. Superior Court*, *supra*, 40 Cal.App.5th at p. 753; see Welf. & Inst. Code, § 707, subd. (a)(1); Stats. 2018, ch. 1012, § 1; Legis. Counsel's Dig., Sen. Bill No. 1391 (2017-2018 Reg. Sess.) ["This bill would repeal the authority of a district attorney to make a motion to transfer a minor from juvenile court to a court of criminal jurisdiction in a case in which a minor is alleged to have committed a specified serious offense when he or she was 14 or 15 years of age, unless the individual was not

21

apprehended prior to the end of juvenile court jurisdiction, thereby amending Proposition 57."].)  Nowhere in the text of Proposition 57, Senate Bill No. 1391, or amendments to Welfare and Institutions Code section 707 is there any reference to a juvenile offender's prior felony conviction.  Proposition 57 and Senate Bill No. 1391 do not say what Mata argues they say.

In addition, Proposition 57 and Senate Bill No. 1391 apply only to cases that are not final.  (See *Lara*, *supra*, 4 Cal.5th at pp. 303-304 [the part of Proposition 57 that prohibits prosecutors from charging juveniles with crimes directly in adult court "applies to all juveniles charged directly in adult court whose judgment was not final at the time it was enacted"]; *People v. Superior Court* (*I.R.*) (2019) 38 Cal.App.5th 383, 393 [Senate Bill No. 1391, like Proposition 57, applies "retroactively 'to all juveniles . . . whose judgment was not final at the time it was enacted'"], review granted Nov. 26, 2019, S257773.)  Proposition 57 and Senate Bill No. 1391 do not apply to Mata's 1997 conviction, which was final long ago.  (See *People v. Barboza* (2018) 21 Cal.App.5th 1315, 1318-1319 [Proposition 57 did not apply to the defendant, whose judgment of conviction became final before Proposition 57 went into effect].)

None of the cases Mata cites holds otherwise.  In *People v. Buycks* (2018) 5 Cal.5th 857 (*Buycks*) the Supreme Court considered "Proposition 47's effect on felony-based enhancements in resentencing proceedings under section 1170.18." (*Buycks*, at p. 871.)  Proposition 47 "reclassified as misdemeanors certain offenses that previously were felonies or 'wobblers'" and added section 1170.18, "which permits those previously convicted of felony offenses that Proposition 47 reduced to misdemeanors to petition to have such felony convictions resentenced or redesignated as misdemeanors." (*Buycks*, at p. 871.)  Section 1170.18, subdivision (k), provides, in relevant part, "A felony

conviction that is recalled and resentenced . . . or designated as a misdemeanor . . . shall be considered a misdemeanor for all purposes." The Supreme Court in *Buycks* held that "Proposition 47's mandate that the resentenced or redesignated offense 'be considered a misdemeanor for all purposes' [citation] permits defendants to challenge felony-based section 667.5 and 12022.1 enhancements when the underlying felonies have been subsequently resentenced or redesignated as misdemeanors." (*Buycks*, at p. 871.)

Neither Proposition 57 nor Senate Bill No. 1391 contains language approximating the expansive directive of Proposition 47 to treat redesignated offenses as a misdemeanor "for all purposes." Moreover, unlike the defendants in *Buycks* who successfully petitioned to have their felony offenses "retroactively reduced to misdemeanors" (*Buycks*, *supra*, 5 Cal.5th at p. 878), Mata did not successfully petition to have his 1997 felony case transferred to juvenile court because, as discussed, Proposition 57 and Senate Bill No. 1391 do not apply to that final judgment. His 1997 felony conviction remains valid.

Citing *People v. Sumstine* (1984) 36 Cal.3d 909 at page 918, Mata argues that he may "collaterally attack the constitutionality of a long-ago final conviction used presently to enhance his sentence by [a] motion to strike the prior conviction in the reviewing court." *Sumstine* doesn't say that. In *Sumstine* the defendant argued "a prior conviction must automatically be stricken if the record of that conviction is silent regarding the preservation of his *Boykin/Tahl* rights."[8] (*Id.* at p. 914.) The

---

8    In *Boykin v. Alabama* (1969) 395 U.S. 238 [89 S.Ct. 1709, 23 L.Ed.2d 274] the United States Supreme Court held, "It was error . . . for the trial judge to accept [the] petitioner's guilty plea

Supreme Court held that, notwithstanding an earlier case that limited motions to strike a prior conviction to challenges based on the denial of the right to counsel, "a defendant may move to strike a prior conviction on *Boykin*/*Tahl* grounds," but "must allege actual denial of his constitutional rights." (*Id*. at pp. 914, 922.)  Mata does not argue his 1997 conviction violated his rights under *Boykin*/*Tahl* or any other constitutional right; his challenge is statutory—a voter initiative and a legislative enactment that amended section 707 of the Welfare and Institutions Code.[9]  (See *People v. Level* (2002) 97 Cal.App.4th

---

without an affirmative showing that it was intelligent and voluntary." (*Id*. at p. 242.)  In *In re Tahl* (1969) 1 Cal.3d 122 the Supreme Court held that "each of the three rights . . . —self-incrimination, confrontation, and jury trial—must be specifically and expressly enumerated for the benefit of and waived by the accused prior to [the court's] acceptance of his guilty plea." (*Id*. at p. 132.)

[9]    The provision of Proposition 57 that removed prosecutors' direct filing authority, which did not involve any changes to the California Constitution, is distinct from the provision of Proposition 57 that authorized the early release of nonviolent adult prisoners, which did amend the California Constitution by adding article I, section 32.  (See Cal. Const., art. I, § 32, subd. (a)(1) ["Any person convicted of a nonviolent felony offense and sentenced to state prison shall be eligible for parole consideration after completing the full term for his or her primary offense."]; *In re King* (2020) 54 Cal.App.5th 814, 818-819, review granted Dec. 9, 2020, S265247; *In re Edwards* (2018) 26 Cal.App.5th 1181, 1184.)  Mata does not contend the amendment to the state constitution transforms his motion to strike into a constitutional challenge to his prior conviction.  (See *Garcia v. Superior Court* (1997) 14 Cal.4th 953, 963 ["previous

24

1208, 1214 [defendant could not move to strike a conviction for a serious or violent felony she committed when she was 17 years old because a motion to strike under *Sumstine* "is only available to challenge the *constitutionality* of a prior conviction that is alleged for purposes of a sentence enhancement"].)

Mata's reliance on *People v. Trujeque* (2015) 61 Cal.4th 227 (*Trujeque*) is equally misplaced. In *Trujeque* the prosecution alleged a special circumstance under section 190.2, subdivision (a)(2), that the defendant had previously been convicted of second degree murder for a killing he committed when he was 16 years old. (*Trujeque*, at p. 245.) The defendant argued the United States Supreme Court's decision in *Breed v. Jones* (1975) 421 U.S. 519, 531 [95 S.Ct. 1779, 44 L.Ed.2d 346] (*Breed*), "which held that an adult prosecution after a juvenile adjudication for the same offense violates double jeopardy, compel[ed] the conclusion that he was placed at least twice in jeopardy." (*Trujeque*, at p. 245.) The California Supreme Court held that *Breed* applied retroactively to the defendant's prior conviction, relying in part on the test for retroactivity of a new constitutional rule of criminal procedure under *Teague v. Lane* (1989) 489 U.S. 288, 299 [109 S.Ct. 1060, 103 L.Ed.2d 334] (*Teague*). (*Trujeque*, at p. 250.) The California Supreme Court also held the defendant could bring a motion to strike his prior conviction because "the collateral challenge here is to a prior conviction alleged as a basis for a *death-qualifying special circumstance*." (*Trujeque,* at p. 252; see *People v. Horton* (1995) 11 Cal.4th 1068, 1135 [allowing "a collateral challenge to a prior conviction that has been alleged as a special circumstance" because "the special need for reliability in the death penalty

_____

decisions authorizing . . . motions to strike have not been based upon state constitutional grounds"].)

25

context is undermined whenever a prior conviction (upon which a death penalty judgment is based) is tainted by a fatal fundamental constitutional defect"].)

*Trujeque* is distinguishable because the test the Supreme Court used to conclude *Breed* applied retroactively does not apply in this case. Neither Proposition 57 nor Senate Bill No. 1391 announced a new constitutional rule of criminal procedure; rather, they made changes to the statutory law, and the test for determining their retroactivity is not based on *Teague*. (See *Lara*, *supra*, 4 Cal.5th at p. 307 ["In order to determine if a law is meant to apply retroactively, the role of a court is to determine the intent of the Legislature, or in the case of a ballot measure, the intent of the electorate."].) Moreover, none of the circumstances in *Trujeque* that supported a motion to strike exists in this case—Mata's 1997 conviction does not suffer from a "fatal fundamental constitutional defect" (*People v. Horton*, *supra*, 11 Cal.4th at p. 1135), and the People did not allege that prior conviction to support a penalty of death.

Citing *In re Harris* (1993) 5 Cal.4th 813, Mata argues "the superior court acted in excess of its jurisdiction when it substantially increased Mata's term of imprisonment based on a prior adult conviction that a change in the law has since invalidated." In *In re Harris* the defendant filed a petition for a writ of habeas corpus challenging his prior conviction on the ground the trial court lacked jurisdiction over him because he was only 15 years old when he committed the offense. (*Id.* at p. 824.) Although the defendant had raised the challenge in his direct appeal, the Supreme Court held that "a claim a court acted in excess of its jurisdiction, where such issue was raised and rejected on direct appeal (or could have been raised on appeal), may be entertained despite the . . . rule" that a defendant cannot raise in a petition for writ of habeas corpus an issue that was

26

raised and rejected on direct appeal, "provided a redetermination of the facts underlying the claim is unnecessary." (*Id.* at p. 841.) *In re Harris* is distinguishable. As discussed, when Mata was convicted of attempted murder in 1997, the law authorized the juvenile court to declare 14-year-old and 15-year-old offenders unfit for treatment in the juvenile court law. The juvenile court that made that ruling in Mata's 1997 case did not act in excess of its jurisdiction in transferring Mata to adult court, and the adult court did not act in excess of its jurisdiction in entering judgment on a felony conviction. And, as discussed, the changes in law (Proposition 57 and Senate Bill No. 1391) did not invalidate Mata's 1997 felony conviction.

Finally, Mata urges us to adopt the reasoning in *People v. Padilla* (2020) 50 Cal.App.5th 244, review granted Aug. 26, 2020, S263375, to apply Proposition 57 and Senate Bill No. 1391 to this case. In *Padilla* the defendant committed murder when he was 16 years old, and the trial court sentenced him to life without the possibility of parole. (*Padilla*, at pp. 246-247.) Following two direct appeals and a successful petition for a writ of habeas corpus challenging his sentence, the trial court again imposed the original sentence. In his third direct appeal, the defendant argued that "in light of Proposition 57 . . . he [was] entitled to a transfer hearing in the juvenile court." (*Id.* at p. 248.) The court in *Padilla* held that, even though the defendant's conviction was final, his sentence was not and that therefore Proposition 57 "applie[d] retroactively to [the defendant's] nonfinal sentence and require[d] that he receive a transfer hearing." (*Id.* at pp. 254-255.) *Padilla* does not help Mata because, as discussed, his 1997 conviction and sentence are final. (Cf. *People v. Federico* (2020) 50 Cal.App.5th 318, 327 ["section 1170, subdivision (d), says nothing about 'reopening' a judgment that has been final for

27

years, in order to apply recently enacted laws retroactively"], review granted, Aug. 26, 2020, S263082.)

## DISPOSITION

The judgment is affirmed.  Mata's motion for judicial notice is denied as unnecessary to our decision.  (See *People v. Townsel* (2016) 63 Cal.4th 25, 42, fn. 2.)

SEGAL, J.

We concur:

PERLUSS, P. J.

FEUER, J.